IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| LAURA COLAFRANCESCO and FRANK ANTHONY COLAFRANCESCO, | |
| Plaintiffs, | Civil Action No. |
| v. | |
| KEY FIRE PROTECTION ENTERPRISES, LLC and GREGG KEY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiffs Laura Colafrancesco ("Mrs. Colafrancesco") and Frank Colafrancesco ("Mr. Colafrancesco," and collectively with Mrs. Colafrancesco, "Plaintiffs") bring this action against Defendants Key Fire Protection Enterprises, LLC ("Key Fire Protection") and Gregg Key (collectively, "Defendants"). Mrs. Colafrancesco brings a claim against Defendants under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), for unpaid overtime wages, liquidated damages, interest, and attorneys' fees and costs. Mrs. Colafrancesco also asserts claims against Defendant Key Fire Protection under Georgia law for breach of contract, and, in the alternative, *quantum meruit*, promissory estoppel, and unjust enrichment. Mr. Colafrancesco brings claims under Georgia law against Defendant Key Fire Protection for breach of contract and, in the alternative, *quantum meruit*, promissory estoppel, and unjust enrichment. Plaintiffs both assert claims against Defendant Key Fire Protection for reasonable attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11. Plaintiffs show the Court as follows:

## NATURE OF THE ACTION AND SUMMARY OF THE ALLEGATIONS

1.     Mrs. Colafrancesco first alleges that Defendants misclassified her as a nonexempt employee and violated the FLSA by failing to pay her overtime wages at a rate of one-and-one-half her regular rate of pay for all hours worked in excess of forty (40) per week.  Mrs. Colafrancesco seeks all unpaid overtime wages, liquidated damages, interest, and reasonable attorneys' fees and costs on her FLSA claim.

2.     Mrs. Colafrancesco also brings five claims under Georgia law against Key Fire Protection.  First, Mrs. Colafrancesco asserts a claim for breach of contract arising from Key Fire Protection's failure to provide her with monthly, nondiscretionary bonuses to which she was contractually entitled between approximately May 2019 and November 2019.  In the alternative, Mrs. Colafrancesco asserts claims for *quantum meruit*, promissory estoppel, and unjust enrichment.  Finally, Mrs. Colafrancesco asserts a claim for her expenses of litigation, including reasonable attorneys' fees and costs, pursuant to O.C.G.A. § 13-6-11.

3.     Additionally, Mr. Colafrancesco brings five claims under Georgia law against Key Fire Protection.  First, Mr. Colafrancesco asserts a claim for breach of contract arising from Key Fire Protection's failure to pay him all overtime hours worked in excess of fifty (50) per week.  In the alternative, Mr. Colafrancesco asserts claims for *quantum meruit*, promissory estoppel, and unjust enrichment.  Lastly, Mr. Colafrancesco asserts a claim for his expenses of litigation, including reasonable attorneys' fees and costs, pursuant to O.C.G.A. § 13-6-11.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over Mrs. Colafrancesco's FLSA claim.

5.      Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiffs' state-law claims because such claims relate to Plaintiffs' employment with Defendants and Defendants' compensation practices, and so are related to Mrs. Colafrancesco's FLSA claim, that they form part of the same case or controversy.

6.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 2.1 because a substantial part of the events and omissions giving rise to this Complaint occurred within the Augusta Division of the Southern District of Georgia, where Key Fire Protection Enterprises has its Principal Office Address, and where Defendants employed Plaintiffs.

## PARTIES

7.      In approximately 2013, Mr. Colafrancesco started his employment with Defendants as a Helper.  In approximately November 2017, Defendants promoted Mr. Colafrancesco to Service Manager, in which position he remained until he resigned on or about May 6, 2021.

8.      Defendants employed Mrs. Colafrancesco as an Administrative Assistant from approximately May 2019 until on or about February 21, 2021.

9.      Key Fire Protection is a Georgia limited liability company that is licensed to conduct business in Georgia and transacts business within the Southern District of Georgia.  Key Fire Protection may be served with process via its registered agent, "Amy Key, Joanne," at 3200 Mike Padgett Highway, Augusta, Georgia 30906.

10.      Key Fire Protection was Mrs. Colafrancesco's "employer" under the FLSA at all times relevant to this Complaint.

11.     Upon information and belief, Key Fire Protection had gross annual revenues in excess of $500,000.00 at all relevant times.

12.     Defendant Key is the founder and owner of Key Fire Protection and conducts business in the Southern District of Georgia.

13.     At all relevant times, Defendant Key was Mrs. Colafrancesco's "employer" within the meaning of the FLSA because Mr. Key: asserted control of Key Fire Protection's day-to-day operations; had ultimate responsibility for the supervision of Mrs. Colafrancesco; and made the decision not to pay Mrs. Colafrancesco overtime wages, in violation of the FLSA.

14.     At all relevant times, Defendants were employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 207.

## STATEMENT OF FACTS

15.     Key Fire Protection provides solutions and services for fire protection and security needs, including fire-sprinkler and fire-alarm systems.

16.     Beginning in approximately November 2017 and continuing until on or about May 6, 2021, Defendants employed Mr. Colafrancesco as a Service Manager.   As Service Manager, Mr. Colafrancesco's duties included: scheduling installation and service appointments for Defendants' customers; taking customer calls; accepting new jobs; directing field members to jobs; ensuring that required materials were at job sites; and coordinating with customers' store managers.

17.     In approximately November 2017, Defendant Key informed Mr. Colafrancesco and other manager-level employees of Key Fire Protection that, as salaried employees, they were expected to work 50 hours per week.

18.     Defendant Key further stated that managers, including Mr. Colafrancesco, should bill their time for hours worked in excess of 50 hours per week, where such hours were billable to a client, for which Mr. Colafrancesco and the other managers would receive overtime pay at a rate of one-and-one-half times their regular rate of pay (the "Overtime Agreement").

19.     Between approximately November 2017 and May 2019, Mr. Colafrancesco worked approximately 50 hours per week, pursuant to Defendant Key's directive.  During that same time period, Mr. Colafrancesco occasionally billed and was paid overtime, in accordance with the Overtime Agreement.

20.     In approximately April 2019, Mr. Colafrancesco secured service contracts for approximately 1,100 grocery and Walmart stores throughout the southeastern United States.

21.     Beginning in approximately May 2019, as a direct result of the service contracts secured by Mr. Colafrancesco, Mr. Colafrancesco began working between 80 and 100 hours each week to meet the increased demand.

22.     Due to the increased demands on Key Fire Protection's business, in approximately May 2019, Key Fire Protection hired Mrs. Colafrancesco as an Administrative Assistant to Mr. Colafrancesco.

23.     Key Fire Protection initially offered Mrs. Colafrancesco a starting hourly wage of $15.00.  However, that hourly rate was significantly less than the effective hourly rate that Mrs. Colafrancesco was then making as a schoolteacher, which job she would have to give up in order to take the position with Key Fire Protection.  Accordingly, Key Fire Protection additionally offered Mrs. Colafrancesco a monthly, nondiscretionary bonus of $1,000.00 to ensure that she would receive the same annual compensation that she was receiving as a schoolteacher (the "Bonus Agreement").

24.     In direct reliance on Key Fire Protection's promise to pay her a base wage of $15.00 per hour plus monthly, nondiscretionary bonuses of $1,000.00, Mrs. Colafrancesco resigned her position as a schoolteacher and accepted the Administrative Assistant position with Key Fire Protection.

25.     Mrs. Colafrancesco's primary duties as Administrative Assistant were to complete administrative paperwork, handle administrative billing work, and answer phone calls. Mrs. Colafrancesco was not empowered to make, and did not make, any meaningful decisions with respect to Key Fire Protection's business.

26.     Mrs. Colafrancesco was not authorized to exercise, and did not exercise, discretion and independent judgment with respect to matters of significance at any point during her employment with Defendants.

27.     Between approximately May 2019 and December 2019, in violation of the Bonus Agreement, Key Fire Protection only paid Mrs. Colafrancesco one monthly, nondiscretionary bonus.

28.     Mrs. Colafrancesco received the single bonus only after she complained to Defendant Key about Key Fire Protection's breach of the Bonus Agreement.  Key Fire Protection never provided any reason or justification to Mrs. Colafrancesco as to why it failed to pay her the bonuses to which she was entitled under the Bonus Agreement.

29.     Between approximately May 2019 and November 2019, Mrs. Colafrancesco regularly worked in excess of 40 hours per week, for which she received overtime pay at a rate equivalent to one-and-one-half times her regular rate of $15.00 per hour.  However, beginning on or about December 9, 2019, Defendants misclassified Mrs. Colafrancesco as an exempt, salaried employee.

30.     Following Defendants' decision to misclassify her as an exempt, salaried employee, Defendants compensated Mrs. Colafrancesco at a weekly rate equivalent to 40 hours of work at $20.00 per hour, regardless of the number of hours that Mrs. Colafrancesco worked in excess of 40 per week.

31.     Between approximately November 2017 and May 2019, Mr. Colafrancesco continued to occasionally report and receive overtime, in accordance with the Overtime Agreement.  However, in approximately June 2019, Defendant Key directed him to stop reporting overtime hours.

32.     Shortly thereafter, Mr. Colafrancesco met with Defendant Key and complained about Key Fire Protection's directive to no longer report overtime hours.  In response, Defendant Key told Mr. Colafrancesco that, in lieu of receiving overtime pay pursuant to the Overtime Agreement, Mr. Colafrancesco was "working towards his future," or words to that effect.

33.     Defendant Key knew that Mr. Colafrancesco wanted to own his own business and told Mr. Colafrancesco that Defendants would eventually make Mr. Colafrancesco the owner of the service side of Key Fire Protection's business, and, accordingly, Mr. Colafrancesco should ignore Key Fire Protection's failure to pay him overtime in violation of the Overtime Agreement.

34.     In reliance on, and as a direct result of, Key Fire Protection's promise to make Mr. Colafrancesco a part owner of Key Fire Protection, and complying with Key Fire Protection's express direction to him, Mr. Colafrancesco stopped routinely submitting his overtime hours worked in excess of 50 per week and continued to work substantial overtime hours.

35.     Between approximately May 2019 and on or about May 6, 2021, Mr. Colafrancesco consistently worked approximately 80 to 100 hours per week, including weekends.  As part of that work, Mr. Colafrancesco fielded roughly 100 phone calls per day, in addition to numerous emails

and text messages.  Mr. Colafrancesco often took phone calls or responded to messages late into the night, sometimes as late as 4 AM.

36.     Defendant Key was aware that Mr. Colafrancesco was working between 80 and 100 hours per week on average because Mr. Key was involved in Key Fire Protection's day-to-day activities, Mr. Key and Mr. Colafrancesco regularly communicated about business matters throughout the day and late into the evening, and Mr. Colafrancesco regularly discussed with Mr. Key the excessive hours that Mr. Colafrancesco was working.

37.     In response to Mr. Colafrancesco's complaints about the excessive number of hours that he was working per week, Defendant Key repeatedly promised Mr. Colafrancesco that, in lieu of the overtime to which he was contractually entitled pursuant to the Overtime Agreement, Key Fire Protection would compensate Mr. Colafrancesco by making him a part owner of Key Fire Protection.

38.     After Mr. Colafrancesco agreed to forego overtime pay to which he was entitled under the Overtime Agreement, he repeatedly asked Defendant Key when he would be made a part owner of Key Fire Protection, including during meetings between Mr. Colafrancesco and Mr. Key at Key Fire Protection's office.  Mr. Key consistently maintained that Mr. Colafrancesco was "working towards his future," or words to that effect, and that Mr. Colafrancesco would be made a part owner in the near future if he continued to forego overtime pay.

39.     As a direct and proximate result of Key Fire Protection's repeated assertions that he would soon be made a part owner of Key Fire Protection, Mr. Colafrancesco continued to forego overtime pay to which he was entitled under the Overtime Agreement between June 2019 and May 2021.

40.     Despite the extensive overtime hours Mr. Colafrancesco worked in reliance on Key Fire Protection's promise to make him a part owner in lieu of receiving overtime pay to which he was entitled under the Overtime Agreement, Key Fire Protection never made Mr. Colafrancesco a part owner of the business.

41.     Between approximately May 2019 and February 2021, due to Key Fire Protection's unrelenting business needs, Plaintiffs took a total of approximately six (6) days off.  Other than those 6 days, Plaintiffs worked every day, including weekends and days when they ostensibly were vacationing.

42.     Between approximately December 2019 and February 2021, Mrs. Colafrancesco's schedule closely mirrored Mr. Colafrancesco's because they worked closely with one another.  As a result, she worked approximately 75 to 95 hours per week.

43.     Defendants had actual knowledge of Mrs. Colafrancesco's hours worked via their communications with Plaintiffs, who both effectively worked the same schedule.  These communications included, without limitation, in-person conversations and frequent phone contact between Plaintiffs and Defendant Key through the day, including well into the night.  Plaintiffs also regularly made statements to Defendant Key regarding the excessive number of hours that they were working each week.

44.     In approximately February 2021, Mrs. Colafrancesco was told that she was temporarily laid off after Key Fire Protection's service contract with Walmart expired and Key Fire Protection's business began to slow.

45.     In approximately May 2021, after receiving no word from Key Fire Protection for over two months, Mrs. Colafrancesco contacted Key Fire Protection to inquire about her

employment status.  That same day, Mrs. Colafrancesco received a separation notice from Key Fire Protection that indicated that her employment had ended on or about February 21, 2021.

46.     During this time period, in approximately April or early May 2021, Mr. Colafrancesco realized that Defendants never intended to make him a part-owner of the business, despite their many representations upon which he had reasonably relied, and had been instead manipulating him into working extreme hours through promises Defendants never intended to keep.

47.     On or about May 5, 2021, Mr. Colafrancesco gave Defendant Key notice that he would be resigning at the end of the week.  The next day, May 6, 2021, Mr. Key informed Mr. Colafrancesco that he did not need to report to work for the remainder of the week.

48.     On information and belief, Defendants violated the FLSA by failing to maintain records of Mrs. Colafrancesco's time worked after she was misclassified as an exempt employee, including all hours worked in excess of 40 per week.

49.     Defendants did not compensate Mrs. Colafrancesco for all hours worked in excess of 40 per week at the rate required by the FLSA, which is one-and-one-half her regular rate of pay.

50.     Defendants' failure to pay Mrs. Colafrancesco one-and-one-half her regular rate of pay for all hours worked in excess of 40 per week was pursuant to a policy and practice of minimizing labor costs by violating the FLSA.

51.     Defendants' FLSA violations were willful and not in good faith.

52.     Defendants have acted in bad faith and caused Plaintiffs unnecessary trouble and expense.

**COUNT I**
**Willful Failure to Pay Overtime Wages in Violation of the FLSA**
**(Asserted by Mrs. Colafrancesco against Defendants)**

53.     Defendants violated the FLSA by misclassifying Mrs. Colafrancesco as an exempt employee and by failing to pay her overtime at a rate of one-and-one-half her regular rate for all hours worked in excess of 40 per week.

54.     At all relevant times, Mrs. Colafrancesco was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

55.     At all relevant times, Defendants employed Mrs. Colafrancesco within the meaning of the FLSA.

56.     The overtime wage provisions set forth in the FLSA apply to Defendants and protect Mrs. Colafrancesco.

57.     Mrs. Colafrancesco regularly worked substantial hours in excess of 40 per week from approximately December 2019 to February 2021.  During this time period, she worked approximately 75 to 95 hours per week.

58.     Between December 2019 and February 2021, Defendants failed to pay Mrs. Colafrancesco at one-and-one-half her regular rate of pay for all hours worked in excess of 40 per week.

59.     As a result of Defendants' willful failure to compensate Mrs. Colafrancesco at a rate of one-and-one-half her regular rate for hours worked in excess of 40 per week, Defendants violated the FLSA.

60.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255(a).

61.     Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Mrs. Colafrancesco.

62.     Due to Defendants' willful FLSA violations, Mrs. Colafrancesco is entitled to recover from Defendants her unpaid overtime wages for all of the hours that she worked in excess of 40 per week, an additional and equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT II**
**Breach of Contract—Failure to Pay Nondiscretionary Bonuses**
**<u>(Asserted by Mrs. Colafrancesco against Key Fire Protection)</u>**

63.     The Bonus Agreement is a valid contract that is binding on Key Fire Protection.

64.     The Bonus Agreement imposed a duty of good faith and fair dealing upon Key Fire Protection.

65.     Mrs. Colafrancesco fully performed under the Bonus Agreement.

66.     Key Fire Protection promised Mrs. Colafrancesco the compensation set forth in the Bonus Agreement, in exchange for which Mrs. Colafrancesco: resigned her position as a schoolteacher with the understanding that the bonuses paid out pursuant to the Bonus Agreement would ensure that her compensation with Key Fire Protection was comparable to the compensation that she received as a teacher; accepted the position with Key Fire Protection; and performed valuable services for Key Fire Protection.

67.     Mrs. Colafrancesco relied upon Key Fire Protection's compensation promises in resigning her position as a schoolteacher, accepting the position with Key Fire Protection, and performing valuable services for Key Fire Protection.

68.     In breach of the Bonus Agreement, Key Fire Protection failed to pay Mrs. Colafrancesco numerous nondiscretionary bonuses to which she is entitled.

69.     Key Fire Protection is liable to Mrs. Colafrancesco for breach of contract in the full amount of the unpaid nondiscretionary bonuses, plus interest and attorneys' fees and costs.

**COUNT III (PLED IN THE ALTERNATIVE)**
**Quantum Meruit**
**(Asserted by Mrs. Colafrancesco against Key Fire Protection)**

70.     In the alternative, Key Fire Protection is liable to Mrs. Colafrancesco for *quantum meruit* in the full amount of nondiscretionary bonuses owed to her under the Bonus Agreement, plus interest and attorneys' fees and costs.

71.     In reliance on the representation by Key Fire Protection that she would be paid all compensation owed pursuant to the Bonus Agreement, Mrs. Colafrancesco: resigned her position as a schoolteacher with the understanding that the bonuses paid out pursuant to the Bonus Agreement would ensure that her compensation with Key Fire Protection was comparable to the compensation that she received as a teacher; accepted the position with Key Fire Protection; and performed valuable services for Key Fire Protection.

72.     The services Mrs. Colafrancesco performed for Key Fire Protection were done at the request of Key Fire Protection, which knowingly accepted such services.

73.     Key Fire Protection's acceptance of Mrs. Colafrancesco's services without payment to her of the full amount of compensation promised pursuant to the Bonus Agreement would be unjust.

74.     At the time Mrs. Colafrancesco performed services for Key Fire Protection, she expected to be paid all compensation owed pursuant to the Bonus Agreement.

75.     At the time Mrs. Colafrancesco performed services for Key Fire Protection, Key Fire Protection knew that she expected Key Fire Protection to pay her all compensation owed pursuant to the Bonus Agreement.

76.     Key Fire Protection is liable to Mrs. Colafrancesco for *quantum meruit* in the full amount owed pursuant to the Bonus Agreement, plus interest and attorneys' fees and costs.

### COUNT IV (PLED IN THE ALTERNATIVE)
### Promissory Estoppel
### (Asserted by Mrs. Colafrancesco against Key Fire Protection)

77.     In the alternative, Key Fire Protection is liable to Mrs. Colafrancesco for promissory estoppel pursuant to O.C.G.A. § 13-3-44 in the full amount owed pursuant to the Bonus Agreement, plus interest and attorneys' fees and costs.

78.     Key Fire Protection promised Mrs. Colafrancesco that Key Fire Protection would compensate her for services she provided by paying her compensation that included monthly nondiscretionary bonuses.

79.     Key Fire Protection should have reasonably expected Mrs. Colafrancesco to rely on its promise to pay her the full compensation that she was owed under the Bonus Agreement.

80.     In reliance on the representation by Key Fire Protection that she would be paid the full compensation owed pursuant to the Bonus Agreement, Mrs. Colafrancesco: resigned her position as a schoolteacher with the understanding that the bonuses paid out pursuant to the Bonus Agreement would ensure that her compensation with Key Fire Protection was comparable to the compensation that she received as a teacher; accepted the position with Key Fire Protection; and performed valuable services for Key Fire Protection.

81.     Mrs. Colafrancesco relied on Key Fire Protection's promise to her detriment, by resigning her more lucrative position as a schoolteacher and performing valuable services for Key Fire Protection instead of pursuing other opportunities.

82.     Injustice can only be avoided by enforcing Key Fire Protection's promise to pay Mrs. Colafrancesco the full amount of compensation owed to her pursuant to the Bonus Agreement.

83.     Key Fire Protection is liable to Mrs. Colafrancesco for promissory estoppel pursuant to O.C.G.A. § 13-3-44 in the full amount owed pursuant to the Bonus Agreement, plus interest and attorneys' fees and costs.

**COUNT V (PLED IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Asserted by Mrs. Colafrancesco against Key Fire Protection)**

84.     In the alternative, Key Fire Protection is liable to Mrs. Colafrancesco for unjust enrichment in the amount of the full compensation owed pursuant to the Bonus Agreement, plus interest and attorneys' fees and costs.

85.     Key Fire Protection promised Mrs. Colafrancesco that Key Fire Protection would compensate her for valuable services that she provided by paying her the monthly nondiscretionary bonuses owed to her pursuant to the Bonus Agreement.

86.     Key Fire Protection requested that Mrs. Colafrancesco perform valuable services for its benefit, and knowingly accepted such services, with the full knowledge that Mrs. Colafrancesco performed such valuable services because of Key Fire Protection's promise to pay her the full compensation owed pursuant to the Bonus Agreement.

87.     In reliance on the representation by Key Fire Protection that she would be paid the full compensation owed pursuant to the Bonus Agreement, Mrs. Colafrancesco performed valuable services for Key Fire Protection and thereby conferred a benefit to Key Fire Protection.

88.     Injustice can only be avoided by enforcing Key Fire Protection's promise to pay Mrs. Colafrancesco the full compensation owed pursuant to the Bonus Agreement.

89.     Key Fire Protection is liable to Mrs. Colafrancesco for unjust enrichment in the amount of the full compensation owed pursuant to the Bonus Agreement, plus interest and attorneys' fees and costs.

## COUNT VI
### Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11
### (Asserted by Mrs. Colafrancesco against Key Fire Protection)

90.     Key Fire Protection has acted in bad faith, including, but not limited to, its breach of the Bonus Agreement by failing to pay Mrs. Colafrancesco monthly, nondiscretionary bonuses to which she was entitled.

91.     In refusing to pay Mrs. Colafrancesco the money she is owed, Key Fire Protection has caused Mrs. Colafrancesco unnecessary trouble and expense.

92.     Pursuant to O.C.G.A. § 13-6-11, Key Fire Protection is liable for Mrs. Colafrancesco's expenses of litigation, including attorneys' fees and costs.

## COUNT VII
### Breach of Contract—Failure to Pay Overtime Pay
### (Asserted by Mr. Colafrancesco against Key Fire Protection)

93.     The Overtime Agreement is a valid contract that is binding on Key Fire Protection.

94.     The Overtime Agreement imposed a duty of good faith and fair dealing upon Key Fire Protection.

95.     Mr. Colafrancesco fully performed under the Overtime Agreement.

96.     Key Fire Protection promised Mr. Colafrancesco the compensation set forth in the Overtime Agreement, in exchange for which he performed valuable services for Key Fire Protection.

97.     Mr. Colafrancesco relied upon Key Fire Protection's compensation promises in performing valuable services for Key Fire Protection.

98.     In breach of the Overtime Agreement, Key Fire Protection has failed to pay Mr. Colafrancesco overtime wages at a rate of one-and-one-half his regular rate for all hours worked in excess of 50 per week during the relevant time period.

99.     Key Fire Protection is liable to Mr. Colafrancesco for breach of contract in the full amount of the unpaid overtime pay, plus interest and attorneys' fees and costs.

**COUNT VIII (PLED IN THE ALTERNATIVE)**
**Quantum Meruit**
**(Asserted by Mr. Colafrancesco against Key Fire Protection)**

100.     In the alternative, Key Fire Protection is liable to Mr. Colafrancesco for *quantum meruit* in the full amount of unpaid overtime wages owed to him under the Overtime Agreement, plus interest and attorneys' fees and costs.

101.     In reliance on the representation by Key Fire Protection that he would be paid overtime compensation for hours worked in excess of 50 per week, or that he would be made a part owner of Key Fire Protection, Mr. Colafrancesco performed valuable services for Key Fire Protection.

102.     The services Mr. Colafrancesco performed for Key Fire Protection, including the substantial hours worked, were done at the request of Key Fire Protection, which knowingly accepted such services.

103.     At the time Mr. Colafrancesco performed services for Key Fire Protection, he expected either to receive overtime compensation for hours worked in excess of 50 per week or to be made a part owner of Key Fire Protection.

104.     Due to Key Fire Protection's failure to make Mr. Colafrancesco a part owner, and failure to pay him overtime for hours worked in excess of 50 per week, Key Fire Protection's acceptance of Mr. Colafrancesco's services without payment to him in the full amount of compensation promised pursuant to the Overtime Agreement would be unjust.

105.     Key Fire Protection is liable to Mr. Colafrancesco for *quantum meruit* in the full amount owed pursuant to the Overtime Agreement, plus interest and attorneys' fees and costs.

**COUNT IX (PLED IN THE ALTERNATIVE)**
**Promissory Estoppel**
**(Asserted by Mr. Colafrancesco against Key Fire Protection)**

106.    In the alternative, Key Fire Protection is liable to Mr. Colafrancesco for promissory estoppel pursuant to O.C.G.A. § 13-3-44 in the full amount owed pursuant to the Overtime Agreement, plus interest and attorneys' fees and costs.

107.    Key Fire Protection promised Mr. Colafrancesco that Key Fire Protection would compensate him for valuable services that he provided by paying him overtime compensation for hours worked in excess of 50 per week or by making him a part owner of Key Fire Protection.

108.    Key Fire Protection should have reasonably expected Mr. Colafrancesco to rely on its promise to pay him overtime compensation for hours worked in excess of 50 per week, or to make him a part owner, in exchange for providing valuable services, including his performance of substantial work hours.

109.    In reliance on the representation by Key Fire Protection that he would be paid overtime for hours worked over 50 hours per week, or that he would be made a part owner of Key Fire Protection, Mr. Colafrancesco performed valuable services for Key Fire Protection, including working substantial overtime hours.

110.    Mr. Colafrancesco relied on Key Fire Protection's promise to his detriment, by performing valuable services and working substantial overtime hours for which he was not paid.

111.    Injustice can only be avoided by enforcing Key Fire Protection's promise to pay Mr. Colafrancesco the substantial overtime wages that he was promised.

112.    Key Fire Protection is liable to Mr. Colafrancesco for promissory estoppel pursuant to O.C.G.A. § 13-3-44 in the full amount owed pursuant to the Overtime Agreement, plus interest and attorneys' fees and costs.

**COUNT X (PLED IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Asserted by Mr. Colafrancesco against Key Fire Protection)**

113.    In the alternative, Key Fire Protection is liable to Mr. Colafrancesco for unjust enrichment in the amount of the full compensation owed pursuant to the Overtime Agreement, plus interest and attorneys' fees and costs.

114.    Key Fire Protection promised Mr. Colafrancesco that Key Fire Protection would compensate him for valuable services that he provided by paying him overtime wages for hours worked in excess of 50 per week, or by making him a part owner of Key Fire Protection, in exchange for his substantial overtime hours worked.

115.    Key Fire Protection requested that Mr. Colafrancesco perform valuable services for its benefit, and knowingly accepted such services, with the full knowledge that Mr. Colafrancesco performed such valuable services because of Key Fire Protection's promise to pay him overtime wages, or to make him a part owner, in exchange for his substantial hours worked.

116.    In reliance on the representation by Key Fire Protection that he would be paid overtime wages, or would be made a part owner, Mr. Colafrancesco performed valuable services for Key Fire Protection, and thereby conferred a benefit to Key Fire Protection, by working substantial overtime hours for which he was not paid.

117.    Injustice can only be avoided by enforcing Key Fire Protection's promise to pay Mr. Colafrancesco the full compensation owed pursuant to the Overtime Agreement.

118.    Key Fire Protection is liable to Mr. Colafrancesco for unjust enrichment in amount of the full compensation owed pursuant to the Overtime Agreement, plus interest and attorneys' fees and costs.

**COUNT XI**
**Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**(Asserted by Mr. Colafrancesco against Key Fire Protection)**

119.    Key Fire Protection has acted in bad faith, including, but not limited to, its breach of its agreement to pay Mr. Colafrancesco overtime wages for the substantial overtime hours that he worked.

120.    In refusing to pay Mr. Colafrancesco the money he is owed, Key Fire Protection has caused Mr. Colafrancesco unnecessary trouble and expense.

121.    Pursuant to O.C.G.A. § 13-6-11, Key Fire Protection is liable for Mr. Colafrancesco's expenses of litigation, including attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand a **TRIAL BY JURY** and entry of a judgment granting the following relief:

a)    A declaratory judgment that Defendants' failure to pay overtime to Mrs. Colafrancesco violated the FLSA;

b)    Application of the FLSA's three-year statute of limitations;

c)    An award to Mrs. Colafrancesco of unpaid overtime compensation due under the FLSA;

d)    An award to Mrs. Colafrancesco of liquidated damages;

e)    An award to Mrs. Colafrancesco in the full amount of nondiscretionary bonuses that she is owed;

f)    An award to Mr. Colafrancesco in the full amount of overtime wages that he is owed;

g)    An award of prejudgment and post-judgment interest on Plaintiffs' claims;

20

h)      An award of costs and expenses of this action, together with reasonable attorneys'

and expert fees; and

i)      Such other and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of July 2021.

>*/s/ C. Andrew Head*
>C. Andrew Head, GA Bar No. 341472
>HEAD LAW FIRM, LLC
>730 Peachtree St NE
>Suite 600
>Atlanta, GA 30308 (satellite office)
>4422 N. Ravenswood Ave., Suite 3
>Chicago, IL 60640 (resident office)
>T: (404) 924-4151
>F: (404) 796-7338
>E: ahead@headlawfirm.com
>
>Justin M. Scott, Lead Counsel **Pro hac
>vice* application to be filed**
>Georgia Bar No. 557463
>Michael David Forrest **Pro hac vice*
>application to be filed**
>Georgia Bar No. 974300
>Scott Employment Law, P.C.
>160 Clairemont Avenue, Suite 610
>Decatur, Georgia 30030
>Telephone: 678.780.4880
>Facsimile: 478.575.2590
>jscott@scottemploymentlaw.com
>mforrest@scottemploymentlaw.com
>
>Counsel for Plaintiffs

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

LAURA COLAFRANCESCO and FRANK ANTHONY COLAFRANCESCO

**(b)**   County of Residence of First Listed Plaintiff   Aiken County, SC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

See Attachment A.

## DEFENDANTS

KEY FIRE PROTECTION ENTERPRISES, LLC and GREGG KEY

County of Residence of First Listed Defendant   Richmond County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. 201 et seq.

Brief description of cause:
Claim for unpaid overtime wages and supplemental breach-of-contract and equitable claims under Georgia law

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
07/26/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ C. Andrew Head

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT                  APPLYING IFP                    JUDGE                         MAG. JUDGE

## <u>Attachment A—Attorneys for Plaintiffs</u>

- C. Andrew Head
  HEAD LAW FIRM, LLC
  730 Peachtree St NE, Suite 600
  Atlanta, GA 30308 (satellite office)
  4422 N. Ravenswood Ave., Suite 3
  Chicago, IL 60640 (resident office)
  Telephone: (404) 924-4151

- Justin M. Scott, Lead Counsel, **\*\*_pro hac vice_ application to be filed\*\***
  Michael D. Forrest \*_pro hac vice_ application to be filed\*\*
  Scott Employment Law, P.C.
  160 Clairemont Ave., Suite 610
  Decatur, Georgia 30030
  Telephone: (678) 780-4880

1